619 A.2d 548

**Kevin Tyrone LATTISAW**

v.

**STATE of Maryland.**

**No. 55, Sept. Term, 1992.**

Court of Appeals of Maryland.

Feb. 11, 1993.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case involves the polling of a jury to determine whether the guilty verdict announced by the foreperson was the verdict of each juror. Specifically, the issue is whether the trial court erred in allowing the guilty verdict to stand without probing into the meaning of one juror's response that her verdict was guilty, "with reluctance."

## I

Early in the morning of February 2, 1990, Calvert County Deputy Sheriff Thomas Kane noticed a car pass by with its tailpipe scraping the street. Kane made the vehicle stop. Petitioner Kevin Tyrone Lattisaw was driving; Sherman Gross was a passenger. Kane asked Lattisaw and Gross to step out of the vehicle when Lattisaw could not produce the car's registration and responded suspiciously to questions about its ownership. Kane called for backup assistance and, with Lattisaw's consent, began to search the car for weapons and drugs. Kane observed what appeared to be crack cocaine on the rear floorboard. A drug-sniffing dog, brought to the scene by the backup, indicated that the substance was indeed cocaine, and the dog revealed further caches of crack cocaine in the rear-seat area. Kane also found a large sum of money in the car, at which point he arrested Lattisaw.

Lattisaw was charged with simple possession of cocaine and with possession of cocaine with intent to distribute. He was tried before a jury in the Circuit Court for Calvert County on August 15, 1990. Lattisaw testified in his defense that the contraband in the vehicle did not belong to him. He claimed that he did not know of the drugs or money in the car and that he had seen Gross "fumbling" to remove something from his pocket as Kane approached the vehicle.

After a verdict of guilty was returned as to both counts, Lattisaw requested that the jury be polled. The clerk of the court asked each juror whether his or her individual verdict was the same as the verdict of the jury as a whole. All responded, "Yes, it is," except for juror Patricia Kiefer, who replied, "Yes, with reluctance." At this juncture of the proceedings, the court granted defense counsel Kent's request for a bench conference, at which the following colloquy ensued:

"MR. KENT: Frankly, I don't know what to do about this, but we have one lady back in the corner who said, yes, with reluctance, and she seems very upset.

THE COURT: What does reluctance mean?

MR. KENT: I don't know.

MR. RIDDLE (Assistant State's Attorney): Your Honor, any time somebody is responsible for somebody facing up to 20 years in jail, I can see them being a little upset and reluctant. I do a lot of things with reluctance, but I make decisions. She said yes.

MR. KENT: I would like to know what reluctance means. Does that mean you are not going to get out of here unless you agree with us?

MR. RIDDLE: That's academic. We don't sit here and decide what goes on in there.

THE COURT: I don't think we do either. She said that her verdict is the verdict of the jury. She was reluctant to do it. Apparently it has something to do with some reluctance on her part, but I don't think that matters. I don't think it makes any difference whether you are reluctant or not, do you?"

Defense counsel began to respond to the court's inquiry as to whether it made any difference that the juror was reluctant. He said: "Well, to me, I think," when the court interrupted him to say:

"[T]he verdict being that way, regardless of how it reached that particular verdict, she came out with a yes, it was her verdict. I don't see whether it would make any difference that she was reluctant to do it."

Defense counsel stated that he had "only asked that the jury be polled because I noticed her [Juror Kiefer], and she kept shaking her head." The court then observed that defense counsel wanted the jury polled "to make sure that's her verdict," noting at the same time that her verdict was "Yes," and he didn't know "what else you can do." The prosecutor objected to the court's inquiring further as to the juror's verdict. He said:

"If you ask her again, it is going to be like asking, well, do you want a second chance. They came to a verdict; she said yes. I would object strongly to any second asking."

The court then asked defense counsel, "What is your motion?" in response to which defense counsel stated, "I don't have any idea. It has never happened before." The court concluded the bench conference, stating:

"I think I am going to have to rule that that is a yes. And I don't think there is any question about it being anything but a yes. I don't know anything else to ask her. I don't think it would be proper for me to ask her what reluctance means. If yes is yes, yes is yes."

Allowing the guilty verdicts to stand, the court sentenced Lattisaw to five years' imprisonment (with all but thirty months suspended) on the charge of possession with intent to distribute and to one-year imprisonment (to run concurrent to the five-year term) on the simple possession charge. Lattisaw appealed.

In an unreported opinion, the Court of Special Appeals rejected Lattisaw's assertion that the reluctant juror's response undermined the unanimity of the guilty verdict and therefore required curative action by the trial court. First, the intermediate appellate court found that Lattisaw had not preserved the issue for review by failing to specify what course of action he wanted the trial court to pursue. Second, the court determined that, on the merits, Kiefer's verbal addendum "with reluctance" did not repudiate her verdict of guilty, and that the jury's verdict was indeed unanimous.[1]

We granted certiorari to consider the novel issue raised in the case.

## II

As a threshold contention, the State again maintains that Lattisaw has not preserved the defective verdict issue

---

1. The Court of Special Appeals did agree with Lattisaw that his conviction for simple possession of cocaine merged with his conviction for possession of cocaine with intent to distribute and should therefore be vacated.

for appellate review. Maryland Rule 4–323(c) provides in part:

"For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs."

The State points out that when the court inquired "[w]hat is your motion," Lattisaw's counsel responded "I don't have any idea." On this premise, the State argues, and the Court of Special Appeals agreed, that Lattisaw failed to apprise the trial court of the action he wished it to take.

We do not read Rule 4–323(c) so narrowly. Lattisaw's counsel stated to the trial court, "I would like to know what reluctance means." When the court expressed its tentative position that a juror's reluctance does not matter, Lattisaw's counsel, although interrupted by the court, sufficiently indicated his disagreement with the court's view. In so doing, he made known his "objection to the action of the court," which is all that Rule 4–323(c) requires. We will therefore consider the question of whether Lattisaw's guilty verdict was defective.

### III

■ By its Declaration of Rights, common law, and procedural rules, Maryland continues an English tradition dating from the Middle Ages in requiring that criminal jury verdicts be unanimous. *See Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). Article 21 of the Maryland Declaration of Rights specifies, "That in all criminal prosecutions, every man hath a right ... to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." In *Ford v. State,* 12 Md. 514, 549 (1859), the Court said: *"Unanimity* is indispensable to the sufficiency of the verdict...." (Emphasis in

original.) And Maryland Rule 4–327(a) specifies that "[t]he verdict of a jury shall be unanimous and shall be returned in open court." [2]

Given the firmness of the unanimity requirement, Maryland also affords criminal defendants an absolute right to poll their juries. *Smith v. State*, 299 Md. 158, 165, 472 A.2d 988 (1984). Polling, we said in *Smith*, "provides a means of establishing that the verdict was with the unanimous consent of the jurors." *Id.* at 166, 472 A.2d 988.[3] When the jurors are polled, we have specified that " '[t]he assent of each juror [polled] must be free and unqualified.' " *Id.* at 167, 472 A.2d 988, quoting L. Hochheimer, *The Law of Crimes and Criminal Procedure* (2d ed. 1904) § 179.

 No Maryland case has ever presented the situation in which a juror's equivocal response to a poll calls into question the unanimity of a verdict. However, we have stated that where a jury's verdict as a whole

"is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation."

*Heinze v. State*, 184 Md. 613, 617, 42 A.2d 128 (1945); *see also Glickman v. State*, 190 Md. 516, 525, 60 A.2d 216 (1948); *Smith, supra*, 299 Md. at 170, 472 A.2d 988. As the State concedes, a trial judge's duty to take corrective action must also apply when the verdict of an individual juror is

---

**2.** A criminal defendant may waive the right to a unanimous jury, if it is done "competently and intelligently." *State v. McKay*, 280 Md. 558, 572, 375 A.2d 228 (1977).

**3.** Maryland Rule 4–327(e) specifies the polling procedure:
"On request of a party or on the court's own initiative, the jury shall be polled after it has returned a verdict and before it is discharged. If the jurors do not unanimously concur in the verdict, the court may direct the jury to retire for further deliberation, or may discharge the jury if satisfied that a unanimous verdict cannot be reached."

ambiguous or otherwise defective, for it takes but one juror to threaten the constitutional requirement of a unanimous verdict.

### A

The controversy in this case focuses upon whether Kiefer, in responding to the jury poll, was ambiguous in announcing her verdict. The State maintains that such a determination must remain within the trial court's discretion since it is in a unique position to observe the juror's demeanor and tone of voice in responding to the poll. We agree, as do the vast majority of other jurisdictions. *See* Annot., "Juror's Reluctant, Equivocal, or Conditional Assent to Verdict, On Polling, as Ground for Mistrial or New Trial in Criminal Case," 25 A.L.R.3d 1149 (1969, Cum.Supp. 1992).

The State further contends, however, that in the instant case the trial court found there to be no ambiguity in Kiefer's response, "Yes, with reluctance," and that we should respect that finding as not clearly erroneous. In the circumstances of this case, we cannot agree. At the bench conference, the trial court's first reaction to Kiefer's statement was "What does reluctance mean?" By itself, the court's instinctive uncertainty strongly suggests that the juror's response was ambiguous.

More importantly, the response, "Yes, with reluctance," is demonstrably ambiguous in this case, where the record indicates that Kiefer was upset and shaking her head and that the trial court recognized that there was "some reluctance on her part." While there is no telling exactly why Kiefer was reluctant, one distinct possibility, among many, is that she was genuinely uncertain as to the fact of Lattisaw's guilt and may have assented to the verdict despite serious misgivings as to its correctness. If Kiefer's reluctance went to the accuracy of the verdict itself, then her assent to the finding of guilt was not, in Hochheimer's words, "free and unqualified." Therefore, the trial court abused its discretion in failing to take appropriate account

of Kiefer's ambiguous response, which, left unexplored, cast doubt upon the unanimity of the verdict. *See Johnson v. State*, 325 Md. 511, 520, 601 A.2d 1093 (1992) ("The failure to exercise discretion when its exercise is called for is an abuse of discretion."). Indeed, the trial court was clearly in error in believing that it had no discretion *at all* when it said, "I don't know what else you can do.... I don't know anything else to ask her. I don't think it would be proper for me to ask her what reluctance means."

### B

■ To cure the ambiguity in Kiefer's verdict, the trial court may have employed either of two options. The safest course would be for the court to send the jury out for further deliberations in accordance with Maryland Rule 4–327(e), *supra*, with the simple instruction that their verdict must be unanimous.[4] Alternatively, the trial court may attempt to clarify the juror's ambiguous response by questioning the juror directly. In doing so, however, the court must be careful not to influence or coerce the juror's decision during the course of the questioning. As the Supreme Court has said, " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' and jurors are ever watchful of the words that fall from him." *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1945), quoting *Starr v. United States*, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894). And we have warned that

> "[t]he law does not permit the judge to suggest the alteration of a verdict in substance. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within their province."

*Heinze, supra*, 184 Md. at 618, 42 A.2d 128.

---

**4.** *See e.g. Hart v. Com.*, 768 S.W.2d 552 (Ky.App.1989) (no error in refusing to interview ambiguous juror but instead sending jury out for further deliberations as authorized by Kentucky statute).

■ We believe, however, that a limited exchange for the sole purpose of clarifying a juror's ambiguous response may be productive in averting unwarranted further deliberation and delay, where the juror in fact concurs with the verdict once the ambiguity is resolved. In *State v. Frederick*, 783 S.W.2d 469 (Mo.App.1990), for example, the court wrote:

> "Questioning about a juror's verdict by a trial judge in open court 'need not be inherently coercive.' The reviewing court must distinguish between a court's effort to eliminate confusion and its attempt to compel an answer. The trial court errs if it continues to question a juror only after that juror's answers clearly evince disagreement with the verdict."

*Id.* at 472, quoting *State v. Jackson*, 522 S.W.2d 317, 322 (Mo.App.1975). *See also State v. Hatch*, 724 S.W.2d 643, 645 (Mo.App.1986) ("the trial judge may make inquiry in a genteel, polite, non-leading and non-coercive manner that will clarify a juror's response").

We emphasize, as the court in *Frederick* observed, that a court does not clarify an ambiguous response by compelling an end to the ambiguity. For a trial court to demand a simple "yes" or "no" answer ordinarily is improper compulsion. *See e.g. United States v. McCoy*, 429 F.2d 739 (D.C.Cir.1970); *State v. Bell*, 13 Conn.App. 420, 537 A.2d 496 (1988); *Rhodes v. State*, 290 Ark. 60, 716 S.W.2d 758 (1986); *People v. Kellogg*, 77 Ill.2d 524, 34 Ill.Dec. 163, 397 N.E.2d 835 (1979). A court may only attempt to root out the source of the juror's ambiguous response in order to determine whether it is material to the unanimity of the verdict.

## IV

Our holding in this case necessitates a new trial. A limited remand under the provisions of Maryland Rule 8–

604(d) would not be appropriate in the circumstances of this case.[5]

JUDGMENT REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR CALVERT COUNTY FOR A NEW TRIAL; COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY THE COUNTY COMMISSIONER OF CALVERT COUNTY.

---

**5.** Rule 8–604(d) provides in part:
"If the [appellate] Court concludes that the substantial merits of a case will not be determined by affirming, reversing, or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. . . ."