638 A.2d 84

Melvin BUNDY

v.

STATE of Maryland.

No. 69 September Term, 1993.

Court of Appeals of Maryland.

March 14, 1994.

---

**5.** In view of this conclusion we have no occasion to consider the petitioners' request for counsel fees under 42 U.S.C. § 1983.

Devy Patterson Russell, Asst. Public Defender, argued and on brief (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen., argued and on brief (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW, ROBERT M. BELL and RAKER, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned).

CHASANOW, Judge.

We granted Melvin Bundy's petition for a writ of certiorari to consider whether Bundy adequately preserved for appellate review his contention that the trial judge erroneously permitted the State to exercise more than four peremptory challenges. In Bundy's appeal to the Court of Special Appeals, the intermediate appellate court first opined that the State was entitled to only four peremptory challenges in the consolidated trial of Bundy and a codefendant. *See* Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 8–301(d) (providing that, in cases other than those involving death, life imprisonment, or a statutorily prescribed sentence of 20 years or more, "each party is permitted 4 peremptory challenges"). *See also* Maryland Rule 4–313(a)(1). That court, however, held that Bundy's "objection was not timely made" and that the peremptory challenge issue was "not properly preserved for appellate review." *Bundy v. State*, 95 Md.App. 512, 535, 622 A.2d 175, 187 (1993). Bundy disputes this conclusion, contending that his objection was timely and that, since the State exceeded the permitted number of peremptory challenges, his conviction must be reversed. For the reasons discussed below, we hold that Bundy suffi-

ciently preserved for appellate review the issue of how many peremptory challenges the State should have been afforded.

## I.

Bundy was charged with theft of goods valued at $300.00 or more. He elected to be tried by a Baltimore City jury and his trial was consolidated with that of a codefendant.[1] The jury selection process began, and with it, the exercise of peremptory challenges by Bundy, his codefendant, and the State. After the State had exercised four peremptory challenges, the Assistant State's Attorney asserted, "I believe I'm entitled to eight [challenges]," to which the judge responded, "Yeah. Thank you. You're correct." Subsequently, the State exercised a fifth peremptory challenge and the stricken juror was directed to return to the jury assembly room. At this point, counsel for Bundy's codefendant declared, "Your Honor, I'm sorry. I thought the State had exhausted her strikes." The judge immediately reiterated, "You each get four. The State gets eight." After this ruling, the State exercised a sixth challenge, which was followed by the selection of the alternate juror. Thereupon, Bundy's counsel asked to approach the bench and the following bench conference took place:

"[BUNDY'S ATTORNEY]: I'm somewhat confused. This just doesn't seem right. I thought each side got four

---

1. The State's case sought to prove that two brothers, Melvin and Marvin Bundy, entered a jewelry store on Harford Road. According to the State's witnesses, Melvin Bundy (defendant) asked to look at a watch. While the defendant examined the watch, his brother, in a possible attempt to distract the employee, repeatedly asked to see another watch. The employee, however, declined his requests. After the defendant looked at the watch and discussed it with his brother, they bolted for the door. The employee, however, flipped a switch located under the counter, which locked the door. The employee then called to the president of the store, who came up from the basement. Sensing a volatile situation, he pulled a loaded "38 Special" from behind the counter and, without pointing it at the brothers, made them aware of its presence before placing it back under the counter. The brothers returned the watch, alleged that the employee was "distraught," and that she mistakenly claimed they tried to steal it. Despite their pleas that the police not be called, the employee telephoned the police who arrived shortly thereafter and arrested the brothers.

strikes. I'm just looking at the rule book. I don't understand how the State gets eight.

THE COURT: Well, it's two cases here. You get four for your case and the State gets four for her case. [Codefendant's counsel] gets four for her case and she gets four.

[CODEFENDANT'S ATTORNEY]: But, they're being charged as codefendants, Your Honor. It's one trial.

\* \* \* \* \* \*

[BUNDY'S ATTORNEY]: You see what I'm saying. The State—even though they're calling two separate charging documents we are talking about one trial. I mean, the reason that I said that—we are sitting there, she keeps on striking and it just doesn't seem quite right.

THE COURT: Okay.

[BUNDY'S ATTORNEY]: So—

THE COURT: What are you asking?

[BUNDY'S ATTORNEY]: Well—

THE COURT: She is entitled to eight. You each get four.

[BUNDY'S ATTORNEY]: Okay. I'm just going to I guess lodge an objection to the panel then at this point in time.

[CODEFENDANT'S ATTORNEY]: I will join in the objection and ask for a mistrial at this point.

[BUNDY'S ATTORNEY]: I will join in that too."

The judge decided to recess for the day, instructed the jurors that trial would resume the following morning, and dismissed them. After the jurors had left, the discussion about the State's peremptory challenges continued:

"[BUNDY'S ATTORNEY]: Your Honor, if I may, I know you have already ruled on the issue of the peremptory challenges, but I would like to be able to pull some law.

\* \* \* \* \* \*

I think the State is only allowed four strikes in this case. I would like over night just to do a little bit of research on the law and bring [it] to the Court tomorrow and perhaps before the jury comes back.

THE COURT: Well, of course, you can do that, but be here a little early tomorrow. Yes, you get the law and you also, Ms. Pollack [Assistant State's Attorney].

*   *   *   *   *   *

[ASSISTANT STATE'S ATTORNEY]: ... I mean, is the Court asking me to do research over night?

*   *   *   *   *   *

THE COURT: Well, Ms. Pollack, you're an experienced State's Attorney. You advised the Court and I think correctly that you're entitled to that number of strikes.

[ASSISTANT STATE'S ATTORNEY]: I advised the Court on the basis of what I was told by a more experienced State's Attorney.

THE COURT: Well, I'm asking you to please get me the law on it *because if you are, in fact, wrong I'm going to have to dismiss this jury panel tomorrow —*

[ASSISTANT STATE'S ATTORNEY]: I understand.

THE COURT:—*and start over.*" (Emphasis added).

The following day, the judge resumed the peremptory challenge discussion by noting, "[n]ow, the question really is how many [peremptory challenges] were they entitled to. Now, you ... were going to give me some law this morning." After a lengthy discussion on this topic, the judge reiterated his belief that the State seemed to be entitled to eight peremptory challenges and thus concluded, "I'm going to deny your request that this panel be dismissed and a new jury be selected."

The trial proceeded and Bundy was convicted of theft of goods valued at $300.00 or more. Bundy appealed his conviction to the Court of Special Appeals, alleging that the trial court erred in granting the State eight peremptory challenges. In a detailed opinion by Judge Moylan, the intermediate appellate court traced the legislative history behind § 8–301 of the Courts and Judicial Proceedings Article, which entitles "each party" to four peremptory challenges in a case such as Bundy's. In accordance with Bundy's contention that the State remains a single party, even when it prosecutes multiple

defendants in the same trial, Judge Moylan concluded as follows:

"Nothing ... in the 1986 amendment to § 8–301 affected in any way the pre-existing and ongoing status of the State as a single and indivisible party. Indeed, the legislative history of the amending Act reinforces our conclusion that the Legislature certainly did not intend to increase costs and to increase the number of jurors called for service by increasing the peremptory challenges available to the State from a single set of four to multiples of four."

*Bundy,* 95 Md.App. at 531, 622 A.2d at 185. Despite this conclusion, the Court of Special Appeals held that Bundy's objection was untimely and that the peremptory challenge issue was not properly preserved for appellate review. The court stated that neither defendant objected until after "the prospective jurors who had been earlier challenged had left the courtroom and returned to the jury assembly room" and after the alternate juror was accepted. *Bundy,* 95 Md.App. at 534, 622 A.2d at 186.

In its answer to Bundy's petition for a writ of certiorari, the State concedes that it "does not here challenge" the Court of Special Appeals' conclusion that the State was entitled to only four peremptory challenges in the instant case. The State, however, does challenge Bundy's assertion that his objection adequately preserved the issue for appellate review.

## II.

The State and Bundy disagree over whether Maryland Rules 8–131(a) and 4–323(c), concerning the preservation of issues for appellate review, were complied with in the instant case. Rule 8–131(a) provides that, "[o]rdinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court...." At trial, a significant amount of time was devoted to the issue of how many peremptory challenges the State was entitled to exercise. Before affirming his earlier ruling that the "State gets eight" peremptory challenges, the trial judge

permitted Bundy's attorney to research the issue, asked the Assistant State's Attorney also to do some overnight research, and entertained a lengthy discussion regarding the results of the parties' research. Thus, Rule 8–131(a) was clearly satisfied as it "plainly appears by the record [that the peremptory challenge issue was] raised in or decided by the trial court...." Md.Rule 8–131(a).

The State, however, also contends that Bundy failed to comply with Maryland Rule 4–323(c). Rule 4–323(c) provides that, "[f]or purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court." [2] *See Graham v. State*, 325 Md. 398, 411, 601 A.2d 131, 137 (1992) (stating that, unless a party "had no opportunity to do so, he is required to have made known to the court his objection to the ruling at the time the ruling was made"). This rule is premised on the notion that "[t]he ends of justice are served by the avoidance of delay and expense incident to appeals and new trials upon grounds of objection which might have been obviated and corrected in the trial court if the question had been ruled upon." *Davis v. State*, 189 Md. 269, 273, 55 A.2d 702, 704 (1947).

Applying Rule 4–323(c) to the instant case, the Court of Special Appeals held that Bundy's objection was not timely and, therefore, the peremptory challenge issue was not preserved. The court explained its holding as follows:

---

2. In its entirety, Maryland Rule 4–323(c) provides as follows:

   "**Objections to Other Rulings or Orders.**—For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection."

"At the time the appellant finally objected [after the selection of the alternate juror], there was nothing the trial judge could do about the matter. Jurors earlier challenged could hardly be recalled and seated. There would be a question of which jurors then seated should be unseated. There would be a question of whether one of the unseated jurors should, in turn, unseat the alternate. There was, of course, always the possibility that the dismissed jurors had been sent home for the day, thus ending their jury service. There was also the possibility that the dismissed jurors had been sent to another courtroom and, possibly, even impaneled to hear another case. When the judge was finally called upon to rule upon the appellant's objection, there was no remedy available. 'The moving finger writes, and having writ, moves on.'"

*Bundy*, 95 Md.App. at 535, 622 A.2d at 187.

The State maintains that "[t]he law and the record" in this case support the Court of Special Appeals' conclusion. Citing *King v. State Roads Comm'n*, 284 Md. 368, 372–73, 396 A.2d 267, 270 (1979), the State acknowledges that this Court has declared that "a party is obligated to state his dissatisfaction with the jury selection procedure before the jury is sworn." The State, however, maintains that "an even more timely objection" is required when dealing with the erroneous exercise of additional peremptory challenges. The State's reasoning is that "where, as here, a selection procedure results not only in the elimination of jurors from the panel, but their removal from the courtroom, the objecting party's immediate complaint is not merely desirable but necessary."

We are in general agreement with the intermediate appellate court's and the State's comments. Ordinarily an objection should be lodged at the time an excess peremptory challenge is exercised because the trial judge may wish to remedy any error by recalling and seating the juror who was improperly stricken. *See Covington v. State*, 282 Md. 540, 543, 386 A.2d 336, 337 (1978) ("[I]t is incumbent upon a litigant to make known to the court an objection to the action of the

court at the earliest practicable opportunity."). *See also Lohss and Sprenkle v. State*, 272 Md. 113, 119, 321 A.2d 534, 538 (1974) (stating generally that, "when a party has the option of objecting, his failure to do so *while it is still within the power of the trial court to correct the error* is regarded as a waiver estopping him from obtaining a review of the point or question on appeal" (emphasis added)). Even Bundy acknowledges this general principle, noting that "[t]he proper time for objection to the State's utilization of more than four strikes was when the State actually exercised its fifth strike. That is the point at which the State's improper utilization of additional peremptories became obvious; and that is the point at which the trial court could have avoided prejudicing Petitioner." Thus, in order to provide the trial judge with an opportunity to seat an improperly stricken juror, an objection should be noted as soon as the extra peremptory challenge is exercised.[3]

Although generally counsel should immediately object when the opposing party exceeds its allotted number of peremptory challenges, we have recognized that delayed objections to the exercise of peremptory challenges are permissible in limited circumstances. In *Batson v. Kentucky*, 476 U.S. 79, 89, 106

---

**3.** Although the State maintains that Bundy was required to object no later than the point at which the State exercised its fifth strike, it contends that an even earlier objection should be required. The State argues that "[t]he time to have objected was at the time of the court's granting the additional strikes...." It was not necessary, however, for Bundy to object to the court's granting of the additional strikes. As the Court of Special Appeals aptly observed:

"Preliminarily, we have to note that the appellant's complaint ... about the State's having been *awarded* peremptory challenges is beside the point. The *awarding* of excess challenges would be immaterial if, in fact, they were never utilized. In this case, the State used six of the eight peremptory challenges it was awarded. The significant error, therefore, if error it be, is not that the State was *awarded four additional* peremptory challenges to which it was not entitled but that it *actually utilized two additional* peremptories to which it was not entitled." (Emphasis in original).

*Bundy v. State*, 95 Md.App. 512, 514, 622 A.2d 175, 176 (1993) (citing *St. Luke Church v. Smith*, 318 Md. 337, 344, 568 A.2d 35, 38 (1990)). Thus, the defendant correctly asserts that "[t]he proper time for objection to the State's utilization of more than four strikes was *when the State actually exercised its fifth strike.* " (Emphasis added).

S.Ct. 1712, 1719, 90 L.Ed.2d 69, 83 (1986), the United States Supreme Court established that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race. . . ." When applying *Batson* in *Stanley v. State*, 313 Md. 50, 542 A.2d 1267 (1988), this Court explained that

> "[a] *Batson* objection is timely if the defendant makes it no later than when the last juror has been seated and before the jury has been sworn. *By waiting, rather than objecting to the first and every subsequent strike of a black juror, a clearer picture of what the State is doing may be seen; a pattern may form.* And if the objection is delayed, the trial court will have before it the total facts and circumstances of jury selection and thus will be in a better position to make the necessary *Batson* rulings, and to apply an appropriate remedy if one is called for." (Emphasis added).

313 Md. at 69, 542 A.2d at 1276. *See also Parker v. State*, 72 Md.App. 610, 617–18, 531 A.2d 1313, 1317 (1987) (stating that an objection premised upon the use of peremptory challenges in a racially discriminatory manner "appropriately may not be raised, or, at the least, is not cognizable, until the factual predicate for it exists"). Because it is often necessary to obtain a "clearer picture" of how the State is exercising its strikes when a *Batson* violation is alleged, we concluded in *Stanley* that "an objection made just before the jury is sworn will ordinarily be sufficient to preserve a *Batson* issue for appellate review. . . ." *Stanley*, 313 Md. at 69, 542 A.2d at 1276.[4]

---

**4.** In the various scenarios to which *Batson* has been extended, it is often equally necessary for a party to delay his or her objection until a "clearer picture" of how opposing counsel is exercising peremptory challenges has formed. *See Georgia v. McCollum*, 505 U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (extending *Batson* to prohibit criminal defendant from exercising peremptory challenges to purposefully discriminate based on race); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (holding that civil litigant's exercise of racially discriminatory peremptory challenges offends Equal Protection Clause); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that criminal defendant may

We noted in *Stanley,* however, that even in cases where a party alleges racially discriminatory jury selection, "prudence may suggest some action at an earlier time." 313 Md. at 69–70, 542 A.2d at 1276. We observed as follows:

> "If, for example, there is a question as to the race of a potential juror who has been the subject of a peremptory strike, it may be advisable to object at that point, in order to obtain a factual finding as to race while the juror is still available. *And if one appropriate remedy for a Batson violation is to seat the unconstitutionally stricken jurors . . ., it is important to bring the Batson problem to the court's attention promptly. Otherwise, the jurors in question might be excused, and no longer available, if the court ultimately finds that peremptory challenges have been exercised in an unconstitutionally discriminatory manner.* Thus considerations of making an appropriate record . . . and of keeping open options as to a proper remedy are among the considerations that may prompt careful counsel, under some circumstances, to object at a relatively early point in the jury selection process. Similar considerations may guide counsel in deciding the manner in which peremptories are exercised (e.g., challenge jury or struck jury)." (Emphasis added).

*Stanley,* 313 Md. at 70 n. 10, 542 A.2d at 1276 n. 10.

Although the quoted language from *Stanley* is not directly applicable to the instant case, it illustrates the need to object immediately to the improper exercise of peremptory challenges in most non-*Batson* scenarios. Absent a claim of racial discrimination (or gender discrimination),[5] there is no need to

object to race-based exclusion of jurors through peremptory challenges whether or not the defendant and the excluded jurors share the same race).

5. *See Tyler v. State,* 330 Md. 261, 270, 623 A.2d 648, 653 (1993) (holding that under Maryland law the State is prohibited from exercising peremptory challenges in a manner systematically designed to "exclude a person from service as a juror because of that person's sex"). *See also J.E.B. v. T.B.,* 606 So.2d 156 (Ala.Civ.App.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2330, 124 L.Ed.2d 242 (1993) (consid-

wait and see whether a pattern of discriminatory selection develops. Thus, a defendant should object as soon as the State exceeds the proper number of peremptory challenges afforded to it. "Otherwise, the jurors in question might be excused, and no longer available, if the court ultimately finds that peremptory challenges have been exercised in an [improper] manner." *Stanley,* 313 Md. at 70 n. 10, 542 A.2d at 1276 n. 10.

Moreover, if we provided counsel with an unqualified right to object to the opposition's exercise of more than the allotted number of peremptory challenges at any time before the jury is sworn, counsel might time his or her objection so as to gain a tactical advantage or to delay the trial. Rather than objecting when the judge could remedy any error by simply calling a stricken juror back, counsel could wait and see whether the panel as a whole is desirable, and if not, ask that it be stricken. Such a practice, however, would be unacceptable. *Cf. Marsh v. Hand,* 35 Md. 123, 127 (1872) (explaining that the purpose of requiring a timely objection to inadmissible evidence is "to prevent a party from knowingly withholding his objection, until he discovers the effect of the testimony, and then if it turns out to be unfavorable to interpose his objection"). Generally the jury selection process should not be repeated merely because an excess peremptory was exercised. Thus, absent a timely objection under Rule 4–323(c), Bundy would not have adequately preserved the peremptory challenge issue for appellate review.

### III.

With this background in mind, we must now examine the record before us to determine whether Bundy has satisfied the requirements of Rule 4–323(c). Prior to the State's exercise of a fifth peremptory challenge, the judge expressly accepted as correct the Assistant State's Attorney's assertion

---

ering whether *Batson* should be extended to forbid peremptory jury strikes based on gender where nine out of ten men in the venire were stricken in a paternity suit).

that, "I believe I'm entitled to eight [challenges]." When the State exercised a fifth peremptory, defense counsel for Bundy's codefendant proclaimed, "Your Honor, I'm sorry. I thought the State had exhausted her strikes." In accordance with his earlier pronouncement, the judge summarily ruled, "You each get four [peremptory challenges]. The State gets eight." The State insists that Bundy "mischaracterizes" counsel for the codefendant's statement as an objection.

Although "the articulation of the objection was not a paragon of clarity," *Sherman v. State*, 288 Md. 636, 640, 421 A.2d 80, 82 (1980), and although we would recommend that counsel express objections in more definite terms, Rule 4–323(c) was satisfied under the circumstances of this case. This Court made clear in *Lattisaw v. State*, 329 Md. 339, 619 A.2d 548 (1993), that it is not necessary for counsel to exclaim the exact words, "I object," when the trial court makes an adverse ruling. Where the record demonstrates that counsel "sufficiently indicated his [or her] disagreement with the [trial] court's view," we have refused to "read Rule 4–323(c) so narrowly." *Lattisaw*, 329 Md. at 344, 619 A.2d at 550. *See also Phillips v. Venker*, 316 Md. 212, 216, 557 A.2d 1338, 1340 (1989) ("Although it would have been preferable for the attorney to employ the time-honored expression of 'I object,' thus removing any question about preservation, we believe that given the unusual circumstances of this case, his statements were sufficient to convey his objection."); *Scott v. State*, 289 Md. 647, 654, 426 A.2d 923, 927 (1981) ("While appellant's counsel did not use the magic words 'I object', he did make known to the court that to which he objected."); 5 Lynn McLain, *Maryland Evidence* § 103.8, at 26 n. 2 (1987) ("Of course, the words 'I object' are not necessary; it is enough that counsel indicate that he or she protests a particular thing."). In the instant case, the record sufficiently indicates that counsel's statement put the trial judge on notice of her complaint that the State just exceeded its allotted number of peremptory challenges. The judge, however, declined to remedy the State's exercise of its fifth challenge and immediately

reiterated his earlier ruling that the State gets eight challenges and each defendant gets four.

Perhaps anticipating our ruling that Bundy's codefendant complied with Rule 4–323(c), the State notes that, "even had co-counsel's query to the court at this juncture constituted an objection, Bundy still is not entitled to relief. It is settled that a co-defendant's objection is not sufficient to preserve the issue for the non-objecting party." For this proposition, the State cites *Osburn v. State,* 301 Md. 250, 253, 482 A.2d 905, 906 (1984) and *Ezenwa v. State,* 82 Md.App. 489, 514–15, 572 A.2d 1101, 1113 (1990). Thus, the State contends that Bundy's attempt "to climb onto the back of what he asserts was his co-defendant's more timely objection" must fail.

*Osburn,* however, is distinguishable from the facts *sub judice.* On appeal in *Osburn,* the defendant contended that a portion of the State's closing argument was objectionable. At trial, however, only a codefendant objected to the Assistant State's Attorney's argument. The record in *Osburn* indicates that, in response to the codefendant's objection, the judge stated, "overrule it," and informed the State to continue with its closing argument. After this ruling, the codefendant objected again and a bench conference took place. At the bench conference, Osburn had nothing to say about the allegedly improper argument. This Court concluded that "[t]he record reveals that Osburn did not object to the state's argument although [the codefendant] did.... No relief was sought by Osburn and thus, ... the issue has not been preserved for review." *Osburn,* 301 Md. at 253, 482 A.2d at 906.

Expanding on *Osburn* in *Ezenwa,* the Court of Special Appeals held that, where only a codefendant objected to testimony, two other codefendants could not raise the issue before the intermediate appellate court because they did not individually object. 82 Md.App. at 514–15, 572 A.2d at 1113. In that case, counsel for the codefendant stated, "[o]bjection," to which the judge responded, "[o]verruled," and instructed the witness to continue testifying. *Ezenwa,* 82 Md.App. at 514, 572 A.2d at 1113. The two other defendants did not

object, and the intermediate appellate court refused to address the issue on their behalf. *Ezenwa,* 82 Md.App. at 515, 572 A.2d at 1113.

Although we express no opinion on the soundness of the *Ezenwa* holding, we note that Judge Joseph Murphy, commenting on *Ezenwa* in his handbook on Maryland evidence law, wrote the following:

> "This rule should be relaxed, but do not expect that it will be. Unless the identity and/or status of the objecting party is a factor in the trial judge's decision to overrule the objection, any counsel's objection really should be allowed to preserve the issue, at least for all similarly situated parties. On appeal, of course, everyone should be stuck with whatever reasons have been stated in support of any such objection. *Right now, however, unless the trial judge is kind enough to state for the record which parties will receive the benefit of another party's request for relief,* you will always have to protect the record yourself." (Emphasis added).

Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 102(C), at 13 (2d ed. 1993). Judge Murphy's comments highlight one reason why the instant case is distinguishable from *Osburn* and *Ezenwa.* In neither *Osburn* nor *Ezenwa* did the trial judge suggest that the non-objecting defendant would receive the benefit of the other party's objection.

In this case, however, the trial judge was "kind enough" to acknowledge that the codefendant's objection also benefited Bundy. When the codefendant exclaimed, "Your Honor, I'm sorry. I thought the State had exhausted her strikes," the judge explicitly addressed both of the parties in overruling the objection. He immediately stated, *"You each* get four. The State gets eight." (Emphasis added). Thus, the manner in which the trial judge summarily overruled the objection in this case adequately reflects that he assumed the objection was made on behalf of both defendants. As such, Bundy sufficiently preserved the peremptory challenge issue for appellate

review.[6]

In sum, Bundy's codefendant "sufficiently indicated his dis-agreement with the court's view" concerning the proper num-ber of peremptory challenges allotted to the State. *Lattisaw*, 329 Md. at 344, 619 A.2d at 550. "In so doing, he made known his 'objection to the action of the court,' which is all that Rule 4–323(c) requires." *Id.* (quoting Md.Rule 4–323(c)). Further-more, immediately after the codefendant's objection, the trial court ruled on the objection. The manner of that ruling obviated Bundy's need to join in the objection because the judge acknowledged that the objection inured to Bundy's benefit by expressly directing his ruling ("You each get four. The State gets eight.") to both defendants. Thus, the peremp-tory challenge issue was sufficiently preserved by Bundy.

## IV.

Because the Court of Special Appeals decided this case on non-preservation grounds, it failed to determine the relief to which Bundy is entitled. We note that the State prudently declined to contest the Court of Special Appeals' ruling that the State was entitled only to four peremptory challenges

---

**6.** Our conclusion that the judge intended the codefendant's objection to benefit Bundy as well is also evident from the judge's decision to reexamine whether the State had exceeded its allotted number of challenges. *At the request of Bundy's counsel*, the judge gave her permission to "pull some law" on the issue and told her to arrive "a little early" the next day to address the issue. Apparently this was an implicit acknowledgment that the judge was on notice of both parties' objection to his earlier ruling that the State was entitled to eight peremptory challenges. Absent the codefendant's objection at the time the State exercised its fifth challenge, and absent the judge's belief that the objection benefited Bundy as well, it is unlikely that the trial court would have reconsidered the issue at the request of Bundy's counsel. *See* Md.Rule 4–323(c) (stating that, "[f]or purposes of review by the trial court . . . , it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court"). *See also* Maryland Rule of Procedure 522 b (1984) (predecessor of Rule 4–323(c)) (stating that, "[f]or purposes of reconsideration by the trial court," an objection should be made at the time the objectionable ruling is made).

under Md.Code (1974, 1989 Repl.Vol.), Cts. & Jud.Proc. Art.,
§ 8–301(d), and we accept Judge Moylan's well-considered
conclusion. Therefore, whether the State's erroneous exercise
of a fifth and sixth peremptory challenge was harmless, or
whether that error necessitates a new trial, must now be
decided.

The State suggests that, even if Bundy preserved the
peremptory challenge issue and even if the State exercised too
many challenges, we should remand the case to the Court of
Special Appeals for a determination of whether that error was
harmless. For the purpose of judicial economy, however, we
shall address this issue now. *See* Maryland Rule 8–131(b). In
its brief before the intermediate appellate court, the State's
harmless error argument was as follows:

> "[E]ven if [the Court of Special Appeals] were to agree with
> Bundy's interpretation of the peremptory challenge statute
> and rule, he nevertheless should not be entitled to reversal
> of his conviction. As discussed, the goal of the peremptory
> challenge is to achieve impartiality on the jury. Bundy has
> never suggested that he was tried by anything less than an
> impartial jury."

Thus, the State contends that Bundy "is not entitled to
reversal, since he suffered no prejudice as the result of the
[State exercising the additional peremptory challenges]."
This argument might have some merit. *Cf. St. Luke Church
v. Smith*, 318 Md. 337, 343–44, 568 A.2d 35, 38 (1990) (suggest-
ing that in some instances the granting of excess peremptory
challenges may not constitute a "significant deviation from
prescribed procedure" which necessitates a new trial). In the
instant case, however, the trial judge reopened the inquiry
into the peremptory challenge issue and opined that, under
the totality of the circumstances, dismissal of the panel should
be the remedy if the State had in fact exercised two excess
peremptory challenges. Perhaps this was based upon his
realization that, if the State had in fact been improperly
permitted additional peremptory challenges, this may have
had a prejudicial effect on these defendants. Moreover, when

the State was permitted to exercise its excess challenges, the defendant had exhausted his strikes. Based on these facts, the judge told all the parties that if the State was wrong, he was going to "have to dismiss this jury panel." We shall adopt his proposed remedy under these unusual circumstances. Therefore, Bundy is entitled to a new jury panel.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTION AND REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*