490 A.2d 687

**Louis Garland MAYFIELD**

v.

**STATE of Maryland.**

**No. 55, Sept. Term, 1984.**

Court of Appeals of Maryland.

April 9, 1985.

Victoria S. Keating, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Deborah K. Chasanow, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit (retired), Specially Assigned.

ELDRIDGE, Judge.

The question presented in this criminal case is whether, after a jury informs the trial judge that it is deadlocked and discloses the numerical majority-minority division, it is erroneous as a matter of law for the trial judge to give an *Allen*-type charge in the form recommended by the American Bar Association (ABA).

The underlying facts, taken largely from the parties' agreed statement of facts pursuant to Maryland Rule 828 g, are as follows. Louis Garland Mayfield was indicted in the Circuit Court for Prince George's County for attempted armed robbery and related offenses, and he demanded a jury trial. The charges which were submitted to the jury were (1) attempted armed robbery of Brent Thacker, (2) use of a handgun in the commission of a crime of violence, (3) assault with intent to avoid lawful apprehension, (4) false imprisonment of Brent Thacker, and (5) false imprisonment of Raymond Thacker.

The following evidence was presented at trial. At 9:30 p.m., on Wednesday, June 2, 1982, Raymond Thacker

stopped his automobile in front of the subway station in Capitol Heights, Maryland, in order to meet his nephew, Brent Thacker, who was returning from work and who was waiting for his uncle on the sidewalk in front of the subway station. Just as the car was brought to a stop, a man with a gun grabbed Brent Thacker from behind and said: "Give it up or I'll blow you away." Brent Thacker resisted, and the gunman shoved him into the front seat of Raymond Thacker's car. Three other armed men got into the back seat of the car and told Raymond Thacker to drive on.

An off-duty police officer, Alonzo Joy, who was driving past the scene, observed the incident. Joy stopped his own car, got out of it and quickly returned to Raymond Thacker's car. He observed the armed men get out of Raymond Thacker's car and stroll toward the subway station. Joy called to them to stop. The men split up, with one running down the street and the others quickly disappearing into the station. After calling for help, Joy pursued the man fleeing down the street and chased him into a grove of trees. After a K–9 dog eventually located the defendant Mayfield hiding in the woods, Joy identified him as the man whom he had pursued.

The Thackers were not able to identify the defendant as one of the armed men. Moreover, the defendant testified that he lived in the neighborhood and just happened to be jogging in the area when a man with a gun suddenly started to chase him. The defendant stated that he did not know that the man was a police officer, and, as a result, he ran from him.

After the presentation of evidence, jury instructions and closing arguments, the case was submitted to the jury at 4:50 p.m. on November 17, 1982. At 7:10 p.m. that evening, the jury sent a note asking to review testimony of Officer Joy as well as a written statement of a witness which had been alluded to at trial. The court explained that it could not accomodate the jury in this request. The court arranged for the jurors to order dinner to be sent in to the jury room. At 10:09 p.m., the jury sent the following note:

 

"17 Nov.

"To Judge Taylor
    The Jury Vote

|  | Guilty — | Not Guilty |
|---|---|---|
| To Charge I | 11 | 1 |
| To Charge II | 11 | 1 |
| To Charge III | 9 | 3 |
| To Charge IV | 11 | 1 |
| To Charge V | 11 | 1 |

The jury cannot arrive at a unanimous Dicision [sic]."

The defendant Mayfield moved for a mistrial and objected to the court's stated intention to give an *Allen*-type charge.[1] Mayfield also objected to a portion of the actual language to be used, and the court agreed to delete it.

At 10:17 p.m., the court had the jury return to the courtroom and gave them the ABA approved *Allen*-type charge, as follows:

"Mr. Foreman, ladies and gentlemen, we have received your note, I suppose over the signature of your foreman, and I would say this to you.

"That the verdict of a jury must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each of you agree thereto.

"Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.

"Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.

---

1. The adjective comes from *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). As to the ABA recommended form of the charge, *see Goodmuth v. State*, 302 Md. 613, 490 A.2d 682 (1985), filed today, as well as *Burnette v. State*, 280 Md. 88, 371 A.2d 663 (1977), and *Kelly v. State*, 270 Md. 139, 310 A.2d 538 (1973).

"In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you are convinced it is erroneous.

"But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

"Now, with that instruction, I'm going to ask you to go back and give further deliberation to the issues which you're called upon to resolve."

At 10:20 p.m., the jury again retired. At 10:45 p.m., defense counsel renewed the request for a mistrial, stating that "I don't think it's appropriate for those individuals being in there trying to hound my one guy into conviction." The court stated that it would "take the matter under reservation" and that if the jury had not reached a verdict at "about 11:15; 11:20," it would reconsider.

At 11:19, defense counsel renewed his request for a mistrial. Over objection, the court stated that what it proposed to do was to bring the jury in, ask again if there were a possibility of the jury's reaching a verdict, and declare a mistrial if the answer were no. The Bailiff then sent for the jury and reported back that the jury had asked for a "few more minutes," Defense counsel again objected. The court stated that it would have the jury deliberate for another fifteen minutes. At 11:39, the court stated again that it proposed to call the jury in, ask if there were a possibility of reaching a verdict, and declare a mistrial if the answer were no. Defense counsel again asked for the declaration of an immediate mistrial and objected to bringing the jury in to question it about the possibility of reaching a verdict. The court decided that it would not do anything until 12:00 midnight. At 11:59 the jury sent a note stating that it had reached verdicts with respect to all counts except for "charge #3," which was assault with intent to avoid lawful apprehension. The court then declared a mistrial with respect to the assault charge[2] and

---

2. That charge was later dropped by the State.

took the verdicts on the remaining charges. The verdicts were "guilty" on all remaining counts. A poll, conducted at defense counsel's request, confirmed the unanimous verdicts.

The defendant was sentenced and then appealed to the Court of Special Appeals. The intermediate appellate court, by a 2–1 vote, affirmed in an unreported opinion. The majority decided that the trial judge's giving the *Allen* -type charge was not error, saying:

"The fact that the court knew the jury was split 11–1 for conviction at the time the *Allen* charge was given, in our opinion, has little or no different coercive effect than if the court had given the *Allen* charge not knowing what the split happened to be at the time."

The dissenting judge in the Court of Special Appeals, however, reasoned as follows:

"The giving of an ABA-approved *Allen* -type instruction, even over the objection of the defendant, is not in itself an abuse of discretion. But, in my opinion, the giving of such instruction after the jury has announced that it is split eleven to one for conviction is inherently coercive. The jurors knew that the trial judge was aware that there was a lone holdout for acquittal. Of course, the judge could not know which juror was blocking a unanimous verdict, but it must have been clear to all of them that the black-robed figure of authority presiding over the trial had some expectation that the lone holdout would yield. Why else would he give them further instructions instead of accepting their assessment that they were deadlocked?

"The ABA-approved *Allen* charge is neutral in its language and, so long as the judge who gives it is unaware of the jury's numerical division, it may well be neutral in its effect. But even language which is neutral on its face may tend to coerce a single juror into conformity with his eleven peers if he knows that the trial judge knows there

is only one holdout and he knows that his fellow jurors know he is that one."

\*      \*      \*      \*      \*      \*

"We cannot be sure whether the giving of the *Allen* charge after the unfortunate disclosure of the numerical split actually had a coercive effect. I think it is significant, however, that on the charge as to which the jury was divided nine to three it remained deadlocked; but where there was only one juror to be pointed to as the obstruction to the desired unanimity, that juror yielded."

■ Mayfield then filed a petition for a writ of certiorari arguing that, whenever a deadlocked jury reveals its numerical majority-minority division, it is coercive and reversible error for the trial judge to give an *Allen* -type instruction, even in the form approved by the ABA. We granted the petition and shall affirm.

This Court has consistently taken the position that an *Allen* -type charge in the form recommended by the ABA is balanced and not inherently coercive, whether given before the jury begins deliberations or given later to a deadlocked jury. *Goodmuth v. State,* 302 Md. 613, 490 A.2d 682 (1985); *Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1977); *Kelly v. State,* 270 Md. 139, 310 A.2d 538 (1973). In *Kelly,* the Court flatly rejected the position taken by some courts, which have prohibited the use of an *Allen* -type charge in any form. *See* 270 Md. at 141, 310 A.2d 538. Instead, we agreed with the ABA *Standards Relating to Trial by Jury,* § 5.4(b) (1968), that it is "appropriate" for the trial judge to instruct the jury on its deliberation responsibilities. *Id.* at 142, 310 A.2d 538. We further held that the decisions as to whether the ABA recommended *Allen* -type charge should be used and "when to employ it ... are best left to the sound discretion of the trial judge." *Id.* at 143, 310 A.2d 538. These principles were reaffirmed in *Goodmuth v. State, supra,* 302 Md. at 619, 490 A.2d 682, and in *Burnette v. State, supra,* 280 Md. at 97–98, 371 A.2d 663.

It is possible, as the dissenting judge in the Court of Special Appeals argued, that a single minority juror might feel coerced by an ABA approved *Allen* -type charge when that juror believes that the trial judge is aware that there is only one holdout. On the other hand, if a trial judge in this situation were simply to direct that the jurors continue deliberations, without giving any instruction concerning their responsibilities, the lone holdout might also infer that the directive was aimed at him. An instruction to continue deliberations, without any amplification, may arguably be more coercive upon the minority than the ABA recommended *Allen* -type charge. Such unexplained instruction would not contain the ABA approved language which emphasizes "individual judgment," the need to "decide the case for yourself" and the refusal to "surrender your honest conviction ... because of the opinion of your fellow jurors or for the mere purpose of returning a verdict."

The only other alternative, and the one apparently advocated by the defendant Mayfield, is to hold that whenever the jury is deadlocked and the vote is voluntarily disclosed, the trial judge must, as a matter of law, declare a mistrial. In our view, this would be inconsistent with the settled principle that a trial judge's determination to have a jury continue deliberating or to declare a mistrial is a matter largely within his discretion. This particular discretion has been deemed " 'broad,' " and a " 'trial judge's decision [whether or not] to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.' " *In Re Mark R.*, 294 Md. 244, 251, 449 A.2d 393 (1982), quoting from *Arizona v. Washington*, 434 U.S. 497, 509–510, 98 S.Ct. 824, 832–833, 54 L.Ed.2d 717 (1978).

Moreover, the overwhelming majority of courts throughout the country have rejected the defendant's position and have held that a trial judge is not required, as a matter of law, to declare a mistrial whenever a jury, which has not yet been able to reach a verdict, voluntarily reveals its

numerical split. *See, e.g., United States v. Cook,* 663 F.2d 808, 809–810 (8th Cir.1981); *United States v. Warren,* 594 F.2d 1046 (5th Cir.1979); *United States v. Jennings,* 471 F.2d 1310 (2d Cir.1973); *United States v. Williams,* 444 F.2d 108 (9th Cir.1971); *United States v. Sawyers,* 423 F.2d 1335 (4th Cir.1970); *People v. Farella,* 79 Ill.App.3d 440, 34 Ill.Dec. 792, 796, 398 N.E.2d 615, 619 (1979). *State v. Jones,* 558 S.W.2d 233 (Mo.App.1977); *State v. Rogers,* 420 A.2d 1363, 1367–1368 (R.I.1980); *State v. Smith,* 564 P.2d 1194, 1201 (Wyo.1977).

■ We believe that it would be sheer speculation to conclude that, when a jury becomes deadlocked and voluntarily reveals its numerical split, it is always coercive for the trial judge to give an ABA recommended *Allen* -type instruction. This is particularly true in light of the charge's repeated stress upon the need for each juror's individual judgment and the obligation of each juror to adhere to his own convictions. As our cases make clear, whether to have the jury continue deliberating, with or without an ABA approved *Allen* -type charge, or whether to declare a mistrial, is a matter for the trial judge's discretion. His exercise of that discretion will furnish a ground for reversal only when the appellant demonstrates an abuse of discretion because of circumstances in a particular case. No such abuse was demonstrated here.[3]

JUDGMENT AFFIRMED, WITH COSTS.

---

**3.** The instant case, however, should be distinguished from the situation where the jury is deadlocked and the trial judge initiates the inquiry as to the numerical division. *See Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926).