670 A.2d 452

**Paul Renard BISHOP**

v.

**STATE of Maryland.**

**No. 81, Sept. Term, 1994.**

Court of Appeals of Maryland.

Jan. 22, 1996.

Chasanow, J., dissented and filed opinion in which Raker, J., joined.

Claudia A. Cortese, Assistant Public Defender, (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Judge (retired) Specially Assigned.

JOHN F. McAULIFFE, Judge, Retired, Specially Assigned.

This case involves the question of whether a juror's response to a poll of a verdict in a criminal case was ambiguous, and if so, whether the trial judge's action properly resolved the ambiguity.

## I.

Paul Renard Bishop was tried in the Circuit Court for Montgomery County on charges of robbery and conspiracy to commit robbery. At the conclusion of deliberations following a two-day trial, the foreman of the jury announced a verdict of guilty on both counts. Defense counsel requested that the jury be polled. The first two jurors answered "yes, it is" to the clerk's question of whether their verdict was the same as the foreman's verdict. The third juror questioned in the poll responded differently—he said "uhh, reluctantly, yes." [1] The defendant's attorney immediately requested a bench conference, and the following colloquy took place:

> [DEFENSE COUNSEL]: I thought I heard that juror when he initially came out and was questioned is there a verdict, I thought I heard the juror say no and then when the court asked and who shall say for you that juror didn't

---

1. The transcript reports the juror's response as "reluctantly yes." Because proceedings in the Circuit Court for Montgomery County are electronically recorded, we have been able to hear the response of the juror. The tape recording discloses that after a pause, the juror responded "uhh, reluctantly, yes."

respond. Now that juror says in response "Reluctantly, yes."

I would ask the court to send the jury back, keep that juror out here and inquire of him. I don't think "Reluctantly, yes" is an appropriate response at this point in the case.

[PROSECUTOR]: He said yes. I mean, he could be reluctant on any number of grounds. I'm reluctant because of the evidence. I'm reluctant because I feel bad for the guy. I mean, they have been in for two and a half hours and he hasn't, I mean I think they were very carefully instructed that it should be a unanimous verdict.

THE COURT: All right, here is what I'm going to do. I'm not going to send them back. I'm going to ask the clerk to simply start over and ask the jurors again. As you call each name just say is the foreman's verdict your verdict. That is the way to ask it. Is the foreman's verdict your verdict?

[DEFENSE COUNSEL]: I would ask you before doing that is to tell the jury—. At that point I think it becomes coercive. He has expressed reluctance. To then do it in front of the other jurors I think is coercive. I would ask the court then before saying that to tell them that if it is not a unanimous verdict that they can deliberate further, there can be other results.

But I think it is coercive now to start over again when you stopped at that point because that juror says "Reluctantly, yes." I think the court should get some voir dire of that juror.

THE COURT: I don't think it is coercive. I disagree.

In open court, the judge then instructed the clerk to "start polling the jury again and start with the first juror as you did." This time all jurors answered in the affirmative, without adding qualifying words of any kind. The judge then instructed the clerk to "hearken the jury" and the following occurred:

THE CLERK: Ladies and gentlemen of the jury, hearken to your verdict as it stands recorded. Your foreman

sayeth that Paul Bishop is guilty of the matters whereof he stands indicted. And so you all say?

JURY: Yes.

Defense counsel again asked to approach the bench, and the following conference took place:

[DEFENSE COUNSEL]: Again, ... juror number four did not respond to that, did not say yes. I would move for a mistrial at this time. He has, except for when the court went through a procedure which focused on him, he has not responded affirmatively that this is his verdict except for "Reluctantly, yes." He has not responded to the questions asked of the court.

He clearly has reservations and I think it is inappropriate to enroll this verdict.

[PROSECUTOR]: Just for the record because I do not, I honestly don't know whether he responded to the general group questions or not; I didn't watch him. But as to the individual question he obviously did very specifically answer "Yes" on the second round after saying "Yes, reluctantly" on the first.

I don't want the record to be barren of any expression as to whether that definitely took place or not because I didn't watch his lips or listen for him individually as to the group type questions about the foreman's verdict.

THE COURT: All right. All right, your exception is noted. I'm not going to grant your motion.

[DEFENSE COUNSEL]: Will the court inquire as to that last question again?

THE COURT: No. No. Ladies and gentlemen of the jury, thank you very much. You are excused.

Before the jury left, however, there was another bench conference at the request of defense counsel. On this occasion, he again moved for a mistrial, citing *Lattisaw v. State*, 329 Md. 339, 619 A.2d 548 (1993), and arguing that the trial judge erred in failing to either send the jury back for additional deliberation after appropriate instructions or questioning the reluctant juror in a non-coercive manner. He stated that the

situation was similar to that of *Lattisaw*, in that the reluctant juror "was visibly upset at the time and paused for a long time and answered very briefly when asked about his verdict." The prosecutor responded that

> in terms of him being visibly upset, although his statement would suggest that, I did not see anything in terms of tears or face discoloration or anything else that made it appear that he was particularly upset other than the words that he expressed.

The trial judge denied the motion, stating that "starting over . . . was not coercive."

The issue was again argued during the hearing of the defendant's motion for a new trial. The trial judge denied the motion, stating it was his impression that the juror "was reluctantly saying 'reluctant,'" and that under those circumstances the procedure he followed was appropriate.

The defendant appealed to the Court of Special Appeals. That Court agreed with the defendant that if the juror's answer had been ambiguous the trial judge would have been required to take further steps to resolve the ambiguity. The Court concluded, however, that the trial judge did not find the response to be ambiguous, and affirmed on the ground that the finding of the trial judge was within the broad range of discretion properly afforded trial judges in such matters.

This Court granted the defendant's petition for certiorari, and we reverse. We hold that the juror's response was, under the circumstances, ambiguous, and that the action taken by the trial judge was not appropriate to resolve that ambiguity.

## II.

In *Lattisaw*, a juror responded to the poll of the clerk by stating "yes, with reluctance." This Court, in discussing the State's contention that the trial judge found no ambiguity in the juror's response, stated:

> [T]he response, 'yes, with reluctance,' is demonstrably ambiguous in this case, where the record indicates that [the

juror] was upset and shaking her head and that the trial court recognized that there was 'some reluctance on her part.' While there is no telling exactly why [the juror] was reluctant, one distinct possibility, among many, is that she was genuinely uncertain as to the fact of Lattisaw's guilt and may have assented to the verdict despite serious misgivings as to its correctness. If [the juror's] reluctance went to the accuracy of the verdict itself, then her assent to the finding of guilt was not, in Hochheimer's words, 'free and unqualified.'

*Id.* 329 Md. at 346, 619 A.2d 548. Although the determination of whether a particular response by a juror is ambiguous will ordinarily be within the trial court's discretion, we think it clear that the response in this case was ambiguous. It was simply impossible to tell from the response whether the juror's reluctance went to the accuracy of the verdict, or to some other reason. As we pointed out in *Lattisaw,* the very purpose of polling the jurors is to be certain that the verdict is being given with "free and unqualified" assent of each of the jurors, and the response given in this case did not fulfill that purpose.

Nor are we persuaded that the trial judge in this case did not consider the response ambiguous. He obviously felt the need for some clarification, because he did not simply direct the clerk to resume polling, but rather directed that the clerk begin anew. The prosecutor also recognized the ambiguity, stating that the juror might be saying he is "reluctant because of the evidence," or that he is "reluctant because I feel bad for the guy."

 The principal question in this case is not whether the juror's response was ambiguous. It was. The question is whether the trial judge erred in attempting to clear the ambiguity by having the clerk begin the poll anew. In *Lattisaw,* we addressed the options that are available to a trial judge in this situation:

To clear the ambiguity in [the juror's] verdict, the trial court may have employed either of two options. The safest

course would be for the court to send the jury out for further deliberations in accordance with Maryland Rule 4–327(e) ... with the simple instruction that their verdict must be unanimous. Alternatively, the trial court may attempt to clarify the juror's ambiguous response by questioning the juror directly. In doing so, however, the court must be careful not to influence or coerce the juror's decision during the course of the questioning.

*Lattisaw,* 329 Md. at 347, 619 A.2d 548 (footnote omitted).

The trial judge did not elect either of those options. Instead, having halted the poll after the third responding juror's reluctant response, he instructed the clerk, in the hearing of the jury, to "start polling the jury again and start with the first juror as you did." In so doing, he erred. We emphasized in *Lattisaw* that

a court does not clarify an ambiguous response by compelling an end to the ambiguity. For a trial court to demand a simple 'yes' or 'no' answer ordinarily is improper compulsion.

*Id.* at 348, 619 A.2d 548.

The course followed by the trial judge generated a significant possibility that the reluctant juror felt some compulsion to give the response that had proven acceptable as opposed to the one that was obviously unacceptable. The juror had heard two jurors before him say "yes" or "yes, it is," and observed that the poll went on. He knew that when he gave his answer it was unacceptable, because there was an immediate bench conference and the judge directed the clerk to begin again. The juror may well have understood from that scenario that the judge would accept only a "yes" or "no" answer. The procedure employed did not resolve the ambiguity, because it is impossible to determine whether the subsequent "yes" was a product of compulsion or represented the requisite unanimity. The conviction must be reversed, and a new trial granted.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT*

*OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS TO BE PAID BY MONTGOMERY COUNTY.*

CHASANOW, Judge, dissenting.

I respectfully dissent. In the instant case, the second jury poll established that the trial judge was correct in his assumption that when juror number four responded to the jury poll "reluctantly, yes," the juror "really wasn't reluctant and that when he said yes, he meant yes." There is no reason why the judge should be reversed merely because he conducted a second poll of the jury without first sending them back to the jury room.

## *LATTISAW V. STATE*

In *Lattisaw v. State*, 329 Md. 339, 619 A.2d 548 (1993), after a verdict of guilty was returned as to both counts, Lattisaw requested that the jury be polled. The clerk of the court asked each juror whether his or her individual verdict was the same as the verdict of the jury as a whole. All responded, "yes, it is," except for juror Patricia Kiefer, who replied, "yes, with reluctance." A bench conference was held and defense counsel pointed out for the record that the juror was visibly upset and shaking her head as she responded. The prosecutor expressed no objection to this proffer. The trial judge, believing he had no discretion to probe into the meaning of the juror's response, simply enrolled the verdict. This Court reversed, holding that, under the totality of circumstances, the juror's response was ambiguous and the trial judge had abused his discretion in failing to "cure the ambiguity." *Lattisaw*, 329 Md. at 346–47, 619 A.2d at 551–52. The Court also suggested that, if a juror's response is ambiguous, the judge should cure the ambiguity by either sending the jury back to the jury room for further deliberations *or* by further interrogating the juror in a non-coercive manner. If, however, the juror's response, under the totality of circumstances, is deter-

mined by the judge not to be ambiguous then the judge may accept the verdict.

The instant case is distinguishable from *Lattisaw*. The judge, in the instant case, assumed that the response was ambiguous and cleared up any possible ambiguity in a non-coercive manner by having the clerk again poll the jury. When a jury is polled and one juror responds "with reluctance, yes" or something similar, the trial judge may get some indication from the juror's tone, manner of answering and demeanor that the juror is expressing uncertainty about the decision or that the juror is merely expressing reluctance or unhappiness with having to render the decision.

The law in this area was well summed up in an annotation, *"Juror's Reluctant, Equivocal, or Conditional Assent to Verdict, On Polling, as Ground for Mistrial or New Trial in Criminal Case,"* 25 A.L.R.3d 1149 (1969, 1995 Cum.Supp.). That annotation, which was cited with approval in *Lattisaw,* states:

> "It has been recognized that where the juror indicates merely some degree of reluctance or reservation about the verdict, the proper course of action depends largely upon the discretion of the trial judge; that whether the juror has given his free and voluntary assent, or whether his reluctance to assent is so strong that it is extremely unlikely that he will ever voluntarily agree to the verdict, must be determined by the trial judge not only from the exact words used by the juror, but from all the circumstances, including the juror's expression and demeanor; and that in the absence of extraordinary circumstances compelling a conclusion to the contrary, the determination of the trial judge will not be disturbed on appeal." (Footnote omitted).

25 A.L.R.3d at 1151–52.

## IF THE JUROR'S RESPONSE WAS AMBIGUOUS THE TRIAL JUDGE TOOK PROPER ACTION TO SECURE AN UNAMBIGUOUS RESPONSE FROM THE JUROR

The trial judge in the instant case, although not convinced that the juror's response was ambiguous, assumed that it was

and took appropriate corrective action to have the juror render an unambiguous verdict. If a juror's response to the jury poll is deemed ambiguous, then the trial judge has the discretion to take some non-coercive action to attempt to secure an unambiguous response. *See Lattisaw, supra.*

When a juror gives an ambiguous response to a jury poll, two responses by the trial judge were suggested by dicta in *Lattisaw.* We said:

> "To cure the ambiguity in Kiefer's verdict, the trial court may have employed either of two options. The safest course would be for the court to send the jury out for further deliberations in accordance with Maryland Rule 4–327(e), *supra,* with the simple instruction that their verdict must be unanimous. Alternatively, the trial court may attempt to clarify the juror's ambiguous response by questioning the juror directly. In doing so, however, the court must be careful not to influence or coerce the juror's decision during the course of the questioning.

> \* \* \* \* \* \*

We believe, however, that a limited exchange for the sole purpose of clarifying a juror's ambiguous response may be productive in averting unwarranted further deliberation and delay, where the juror in fact concurs with the verdict once the ambiguity is resolved. In *State v. Frederick,* 783 S.W.2d 469 (Mo.App.1990), for example, the court wrote:

> 'Questioning about a juror's verdict by a trial judge in open court "need not be 'inherently' coercive." The reviewing court must distinguish between a court's effort to eliminate confusion and its attempt to compel an answer. The trial court errs if it continues to question a juror only after that juror's answers clearly evince disagreement with the verdict.' [ (Citations omitted).]

*Id.* at 472, quoting *State v. Jackson,* 522 S.W.2d 317, 32[1] (Mo.App.1975). *See also State v. Hatch,* 724 S.W.2d 643, 645 (Mo.App.1986) ('the trial judge may make inquiry in a

genteel, polite, non-leading and non-coercive manner that will clarify a juror's response')." (Footnote omitted).

*Lattisaw*, 329 Md. at 347–48, 619 A.2d at 552.

Obviously any action by a trial judge immediately after a juror responds to a jury poll with "reluctantly, yes" is going to hint to the juror that "reluctantly, yes" is an unacceptable answer. There is almost no way that the trial judge can cure an ambiguity without letting the juror know that the previously given ambiguous answer is inappropriate. What the trial judge must carefully avoid is improperly coercing the juror into giving another answer. Appellate courts must not be naive and must acknowledge that none of the alternatives available to the trial judge are totally free from coercion.

*Lattisaw*'s "safest course" of sending the jury out for further deliberations "with the simple instruction that their verdict must be unanimous," 329 Md. at 347, 619 A.2d at 552 (footnote omitted), is the best way to deal with a juror who clearly has a doubt about the correctness of the verdict announced by the foreperson. Where a juror has not yet reached a verdict, sending the jury back to deliberate is the only alternative, but it is certainly not free from coercion. In *Mayfield v. State*, 302 Md. 624, 490 A.2d 687 (1985), we recognized the possible coercive effect of sending a jury back to the jury room to continue deliberations after the jury announced they were deadlocked eleven to one. Judge Eldridge, writing for the Court, stated:

"It is possible, as the dissenting judge in the Court of Special Appeals argued, that a single minority juror might feel coerced by an ABA approved *Allen*-type charge when that juror believes that the trial judge is aware that there is only one holdout. On the other hand, if a trial judge in this situation were simply to direct that the jurors continue deliberations, without giving any instruction concerning their responsibilities, the lone holdout might also infer that the directive was aimed at him. An instruction to continue deliberations, without any amplification, may arguably be

more coercive upon the minority than the ABA recommended *Allen*-type charge.

*Mayfield,* 302 Md. at 631, 490 A.2d at 691. It takes little imagination to envision what is almost certain to happen when the reluctant juror goes back into the jury room with the other eleven people who have found the defendant guilty and announced in open court that their verdict is unanimous. If our reason for sending the reluctant juror back to the jury room is our fear that anything else might be coercive, we should ask ourselves what could be more potentially coercive for the juror than being alone with eleven other jurors who have just told the entire courtroom that the jury's verdict is unanimous and that the defendant is guilty. This is, however, still the best course of action when the trial judge concludes that a juror has not yet reached a verdict.

*Lattisaw* expressly permits questioning a "reluctant" juror in open court if done in a non-coercive manner. When a trial judge concludes that a "reluctant" juror has probably reached a verdict, but is uncertain about a juror's response and wants some verification, it would seem perfectly proper for the judge or the clerk to simply repeat the poll question, "Is your foreperson's verdict your verdict?" This repetition of the jury poll inquiry does not seem at all coercive. The majority holds that to simply begin the poll again is reversible error unless before beginning the poll again the judge first sends the jury back to the jury room. No reason whatsoever is given for this distinction. There is no reason why the trial judge *must* stop the poll, send the jury back to the jury room, and start the poll again when they return rather than, as in the instant case, simply starting the jury poll again without sending them to the jury room. The trial judge's decision to begin the poll again without sending the jury back to the jury room should not constitute an abuse of discretion.

*Lattisaw* expressly authorized the trial judge to attempt to clarify the juror's response by questioning the juror directly. There is one impermissible inquiry, however, "[f]or a trial court to demand a simple 'yes' or 'no' answer ordinarily is improper compulsion." *Lattisaw,* 329 Md. at 348, 619 A.2d at

552. To demand a yes or no answer does not allow the juror to repeat the previously given answer and forces the juror to make a choice when the juror may not have reached a decision. The trial judge in the instant case did not demand that the juror answer either yes or no or force the juror to reach a decision. He simply had the jury repolled. I have found no case, nor has the majority cited any case, that even remotely suggests that it is improper or coercive for the trial judge or the clerk to simply repeat the poll of the jurors. Indeed, this Court has indicated that a second poll is non-coercive. *See Smith v. State,* 299 Md. 158, 472 A.2d 988 (1984). Although said in a slightly different context, what this Court stated in *Smith* is equally applicable to the instant case. In *Smith* we stated:

> "We find no error on the part of the judge in permitting the forelady to be polled a second time at the request of the State. We first note that the forelady, upon inquiry by the judge, indicated that she wanted to be polled again and that defense counsel interposed no objection. The forelady's response to the first poll was not entirely free of equivocation, ambiguity and evasiveness. The judge was in a position of assessing this initial response of the juror, giving due consideration to her demeanor, appearance and tone of voice. The judge apparently believed that the first poll did not reflect the forelady's true intent, and we cannot say that allowing the second polling was an abuse of judicial discretion. We observe that there is not the slightest indication that the judge in any way did anything amounting to coercion or tending to influence the verdict."

*Smith,* 299 Md. at 179, 472 A.2d at 998. The standard jury poll question is less coercive than almost any alternative form of inquiry, since the juror is free to repeat the same answer, indicate uncertainty as to the verdict, or eliminate any unnecessary surplusage in the previous answer. Repeating the jury poll question seems a safer inquiry than calling upon the juror to explain "with reluctance." Requiring the juror to explain his or her answer may elicit privileged information about the jury's deliberations.

## THE JUROR'S UNEQUIVOCAL RESPONSE CURED ANY POSSIBLE DEFECT IN THE PROCEDURE OR AMBIGUITY IN THE JUROR'S PRIOR RESPONSE

Finally, since the second poll was not coercive, the juror's subsequent unequivocal response cured any ambiguity in the juror's initial response. Once the previously "reluctant" juror gave an unambiguous response to a non-coercive second poll of the jury, any possible defect in the first polling or in the procedure should be deemed cured. This was noted in the previously cited A.L.R. Annotation:

"Where a juror's equivocal, ambiguous, inconsistent, or evasive answers leave doubt as to whether he has assented to the verdict, but his answers are not such as to indicate involuntariness or coercion, it is generally regarded that a subsequent answer which indicates clear and unequivocal assent, either on further interrogation or after further deliberation, will cure the defect and a new trial will not be ordered." (Footnote omitted).

25 A.L.R.3d at 1152.

Webster's New International Dictionary of the English Language 2106 (2d ed. 1959) states: "Reluctant often implies an internal struggle." It is sometimes difficult for jurors to reach a verdict in a criminal case. When a juror answers a jury poll "reluctantly, yes," it may be nothing more than intellectual honesty. The juror may be merely indicating that, although he or she is now convinced of guilt beyond a reasonable doubt, that conclusion was reached only after a difficult internal struggle. The trial judge, observing the juror throughout the trial and during the rendition of the verdict, is in the best position to interpret the response and to gauge the best method of clearing up any ambiguity. The trial judge in the instant case did not abuse his discretion, and there is no need to reverse the conviction since, after a noncoercive second poll, the juror indicated unequivocally that the foreperson's announced verdict was also his verdict.

Judge RAKER has authorized me to state that she joins the views expressed in this dissenting opinion.