LESTER THOMAS MAYNE, JR. *v.* STATE OF
MARYLAND

[Nos. 890 and 930, September Term, 1979.]

*Decided May 7, 1980.*

484

The cause was argued before GILBERT, C. J., and MORTON and THOMPSON, JJ.

*James R. White,* with whom was *C. Daniel Saunders* on the brief, for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Basil Wadkovsky, State's Attorney for Kent County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

On August 9, 1978, the body of Valerie Anne Mayne was found at her home at Rock Hall, Kent County, Maryland. The home was owned by her estranged husband, Lester Thomas Mayne, Jr., the appellant. An autopsy revealed that death was caused by a single stab wound to the abdomen. A knife was discovered near the body by the officers who arrived in response to a telephone call from the appellant. On August 15, 1978, appellant insisted that his attorney inform the police that the knife found by the officers was not the same knife he had discovered when he found his wife's body because that knife had been removed by him. He had thrown it into Swan Creek from the vessel upon which he was living and which was docked nearby. The officers discovered the knife at the location described.

Appellant testified at trial that at or about 2 or 2:30 a.m. on August 9, he left the Village Tavern with his wife, after having a few drinks. At that time he was not intoxicated. After they arrived at her home they talked for approximately half an hour; after which he went to his boat. He remained on the boat for 15 or 20 minutes and then went back to the house where he found his wife "sitting in the living room on the couch crying." At that time, appellant told his wife that he wanted to end their marriage. He then left the house and returned to his boat. After staying on the

boat for a brief period he again returned to the house. Upon his arrival he found his wife lying on the floor bleeding. He picked up a knife that was lying near her and threw it overboard when he went back to his boat. He then went to bed. Upon awakening, he returned to the house and started thinking about what he had done. He said, "I had taken away the knife and I knew it would look pretty bad on me." He then went to the kitchen, got a knife out of the drawer, put some of his wife's blood on it, and threw it on the floor. He stated he was sober at that time. He testified that when he initially discovered the body, he was upset and thought in his confused state of mind that by discarding the knife, no one would see that she had hurt herself.

On September 6, 1978, he was indicted in a seven count indictment charging (1) murder in the first degree; (2) murder in the second degree; (3) manslaughter; (4) assault with intent to murder; (5) assault and battery; (6) making a false statement to the police; and (7) attempted obstruction of justice. The case was tried in the Circuit Court for Caroline County to which it had been removed. The trial judge, K. Thomas Everngam, submitted to the jury counts 1, 2, 5 (as to battery) and 7. The other counts were either *nolle prossed* by the State or dismissed by the court. When the jury returned its verdict, the following occurred:

> "The Court: Gentlemen, we have received another note, which we have read to you in Chambers. 'We may have misled you, we have reached a verdict on Counts one and seven, but are deadlocked on Count two and fear we can not come to a unanimous decision.'

> \* \* \*

> "The Court: It is the Court's ruling that we have instructed them that they can rule on Count seven no matter how they have ruled on the previous Counts, guilty or not guilty. We therefore, will take a partial verdict on the first and seventh Counts."

> \* \* \*

"The Clerk: Lester Thomas Mayne, Jr., please stand and raise your right hand.

"Ladies and Gentlemen of the jury, look upon the defendant at the bar. What say you, Mr. Foreman, do you find the defendant guilty or not guilty of the matter whereof he stands charged on Count one, to wit, murder in the first degree?

"The Foreman: Not guilty.

"The Clerk: What say you, Mr. Foreman, do you find the defendant guilty or not guilty on Count number seven, to wit, attempt to obstruct justice?

"The Foreman: Guilty.

"The Court: Now, Mr. Foreman, do we understand from your notes that you are unable to come to a verdict on Counts two and five; is that correct?

"Mr. Foreman: That is correct, Sir."

After the jurors were harkened unto their verdict, they were excused. Thereafter the State's Attorney inquired of the court as to whether or not there was anything officially in the record with respect to a mistrial as to the remaining counts, whereupon the court declared a mistrial as to count 2, murder in the second degree, and count 5, battery. Appellant received a five year sentence for attempted obstruction of justice.

Thereafter the case was moved to the Circuit Court for Cecil County, (Mackey, J.), where a motion to dismiss counts 2 and 5 on the basis of double jeopardy was denied. In this consolidated appeal, appellant alleges that his conviction for obstruction of justice in the Circuit Court for Caroline County was improper and that the denial of his motion to dismiss by the Circuit Court for Cecil County was in error.

We will answer the contentions in inverse order.

## I Double Jeopardy

Appellant first argues that although Maryland Rule 759 d permits the court to take a partial verdict in a criminal

case and provides that an accused may be retried on any count upon which the jury did not agree, in this case retrial should not be permitted because the trial judge did not state there was a mistrial until after the jury had been discharged. The argument not only lacks supporting authority but it lacks logic as well. The rule itself provides that there is a mistrial if the jury does not agree on all counts and, thus, the declaration by the court was entirely superfluous.[1]

Appellant argues secondly that having been acquitted of the first count which set forth the statutory language of first degree murder, he should by operation of law be found not guilty of second degree murder. He relies on *Blackwell v. State,* 278 Md. 466, 365 A.2d 545 (1976), *cert. denied,* 431 U.S. 918 (1977), which stated that murder indictment for first degree murder also included charges of second degree murder and manslaughter. He argues that double jeopardy precludes another trial. He cites a long line of Maryland cases ending with *Bennett v. State,* 229 Md. 208, 182 A.2d 815 (1962) to show that once an accused is acquitted he cannot be retried. The fallacy with this argument is that there was no acquittal as to murder in the second degree. The law is well settled that "[w]here the meaning of the verdict is so unmistakable, mere inartificiality in its form will not be sufficient to defeat justice by nullification of a verdict which plainly declared the intent of the jury . . .". *Simmons v. State,* 165 Md. 155, 169, 167 A. 60 (1933); *Barber v. State,* 16 Md. App. 235, 241, 295 A.2d 814 (1972). In the instant case, the intent of the jury could not be more clear.[2]

---

1. Rule 759 d states:

"When there are two or more counts, the jury at any time may return a verdict with respect to a count as to which it has agreed, and any count as to which the jury cannot agree, may be tried again."

2. Retrial on second degree murder is possible even under a single count murder indictment. In Rasnick v. State, 7 Md. App. 564, 571, 256 A.2d 543 (1969), *cert. denied,* 257 Md. 735, *cert. denied,* 400 U.S. 835 (1970), this Court stated: "Even though a retrial on murder in the first degree is precluded under some circumstances, e.g. an acquittal at the first trial, that does not mean the accused cannot be retried for second degree murder or manslaughter under the same indictment."

In *Powers v. State,* 285 Md. 269, 401 A.2d 1031 (1979), *cert. denied,* 444 U.S. 937 (1979), the Court extended the doctrine of collateral estoppel as set forth in *Ashe v. Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), to cover a single trial where the jury was unable to agree on a verdict as to one count but acquitted on other counts, having a common issue of ultimate fact. This extension is of no help to the appellant because in the instant case there was no determination of any ultimate fact that would require the appellant's acquittal for second degree murder. It is apparent that all that the jury decided was that appellant did not premeditate his wife's killing.

## II Attempt to Obstruct Justice

Appellant presents two arguments for reversal of his conviction for attempted obstruction of justice. First, he argues that the trial judge erred by his failure to instruct the jury that suicide is not a crime in Maryland. Appellant argues the failure to give the instruction was improper because the appellant could not have been convicted of an attempt to obstruct justice if his wife had committed suicide, because suicide is not a crime in Maryland. We do not see it that way. Under *Md. Code,* Art. 22, § 6, a medical officer, the police officers, and the State's Attorney are charged with the investigation of any death that is suspicious or unusual whether or not a crime has been committed. Appellant's actions in substituting the knife and giving false reports to the police department would have obstructed justice whether or not suicide is a crime in Maryland or whether or not the wife committed suicide in the instant case. *See Md. Code,* Art. 27, § 27.

The appellant next contends that the trial judge committed error in instructing the jury they could consider possible intoxication of the defendant prior to, and at the time of, the crime only as applied to first degree murder. The trial judge's statement of the law was inaccurate because any attempt to commit a crime requires a specific intent. Perkins, *Criminal Law,* 573 (2d ed. 1969). The error was of

no importance, however, because appellant admitted he was sober at the time he put the substitute knife near his wife's body and at the time he falsely advised the police of what happened that morning. The testimony as to intoxication at the time he removed the knife was not sufficient to show that he was "so drunk that he is unable to formulate that *mens rea." State v. Gover,* 267 Md. 602, 606, 298 A.2d 378, 381 (1973). There is no need for a trial judge to give an instruction unless it is supported by the evidence. *Tripp v. State,* 36 Md. App. 459, 463, 374 A.2d 384, *cert. denied,* 281 Md. 745 (1977).

> *Judgment affirmed in No. 890.*
> *Order affirmed in No. 930.*
> *Case remanded for trial.*
> *Appellant to pay the costs.*